# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00803-CV

**Michael Sheldon, Appellant**

**v.**

**Karen Sheldon, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 425TH JUDICIAL DISTRICT
### NO. 10-0757-F425, HONORABLE MARK J. SILVERSTONE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michael Sheldon appeals the trial court's judgment in a post-divorce suit for division of property not divided by the Agreed Final Divorce Decree. In three issues, he challenges the trial court's exclusion of expert testimony, division of property, and award to Karen of certain property alleged to be his separate property. For the reasons that follow, we affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Michael and Karen[1] were married in 1986.[2] Two daughters were born during the marriage, but both were over 18 years of age when Karen filed for divorce in 2010. Through discussions based in part on a spreadsheet drafted by Michael outlining the marital assets, Michael

---

[1] We refer to the parties by their first names for clarity.

[2] The facts stated herein are taken from the record on appeal. We accept as true the facts stated in the parties' briefs unless another party contradicts them. *See* Tex. R. App. P. 38.1(g).

and Karen reached an oral agreement concerning the division of marital property and obtained an Agreed Final Divorce Decree. In relevant part, the decree awarded each party a 50% interest in Michael's employee savings plan, identified as "the Emerson Employee Savings Investment Plan," and the furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in his or her possession. In addition, the decree awarded the marital home to Michael. In a separate agreement not incorporated into the decree, Michael agreed to pay Karen $320,411.64 in cash and a promissory note for approximately $108,000. Michael made the payments as agreed, and Karen applied a portion of the cash payment to the purchase of a new home. Neither party appealed the divorce decree.

**Suit for Post-divorce Division of Property Filed**

In the process of obtaining a Qualified Domestic Relations Order (QDRO) recognizing Karen's right to receive a portion of Michael's benefits payable under the employee savings plan, *see* I.R.C. § 414(p); 29 U.S.C. § 1056(d)(3)(B)(i), Karen discovered that Michael had an additional employer pension plan, identified as "the Emerson Electric Co. Retirement Plan for Salaried Employees of Fisher Controls" (the pension plan), valued at approximately $500,000. Karen sought a second QDRO pertaining to the pension plan and filed suit seeking a post-divorce division of the benefits under the pension plan. *See* Tex. Fam. Code § 9.201(either former spouse may file suit to divide property not divided in divorce decree). Disputes arose between the parties, and Karen amended her petition to request division of additional property, including the parties' antique cars, lawn tools and equipment, a "college fund" designated for the parties' daughters, proceeds from a pending lawsuit, a coin collection, a 16-foot trailer, horses, and antique furniture

2

"to be designated for the parties' children." Michael filed a counter-petition seeking division of additional marital property, including Karen's financial account containing the $320,411.64 cash payment, the home Karen purchased using those funds, horses and a horse trailer, proceeds from loans to Karen's sister and Michael's brother, and the college fund. Michael also sought to have declared as his separate property the antique cars, the lawn tools and equipment, any proceeds from the pending lawsuit, the coin collection, the 16-foot trailer, and the antique furniture. Michael subsequently filed a motion for continuance and request for an appraisal of the marital home that had been awarded to him in the divorce decree. In the motion, Michael stated that Karen claimed the marital home had a value of $550,000 but that he had obtained an appraisal valuing the home as of the date of the divorce at $457,000. He requested that the court appoint an appraiser to appraise the home or accept his current appraisal of $457,000 as the value of the home. Immediately prior to the final hearing, the trial court denied Michael's motion for continuance and request for appraisal.

**Final Hearing**

At the final hearing, the trial court heard the testimony of Karen and Michael concerning their agreement that was incorporated into the divorce decree and the assets they sought to be divided. Karen testified that she and Michael had an agreement to divide the marital assets and offered into evidence what she stated was the final version of the spreadsheet Michael prepared outlining their assets. The spreadsheet listed Michael's cash assets, Karen's cash assets, and joint assets to be divided. There was a separate listing for the college fund. The marital home was valued at $550,000, including a tractor valued at $10,000. Three antique cars were listed, and their values

3

were followed by question marks.[3]  There was a listing for "horse stuff," but there was no stated value.  There was a listing for furniture with a stated value of $10,000 followed by a question mark, but there was no listing for antique furniture.  There were no listings for lawn equipment and tools, any pending lawsuit proceeds, or loans to family members.

Karen testified that at the time the divorce decree was signed, she was living in the marital home, Michael was living in an apartment, and the lawn equipment and tools, the antique cars, "everything" was in her possession.  She stated that for her interest in the home, she received cash and other items.  She testified as to the parties' agreed value for the antique cars and the parties' agreement and her request to the court as to the division of the other assets.  She testified that she hoped that the horses and horse trailer would "certainly [go to their] daughters" and that the antique furniture "eventually, hopefully, will go to my daughters."  On cross-examination, Karen disputed certain values Michael assigned to assets divided in the divorce decree and was unable to place values on some of the previously-divided assets.

Concerning the value of the marital home, Karen referred to the spreadsheet and testified that she and Michael had agreed on a value of $550,000.  She offered into evidence emails from a realtor offering to put the house on the market for $600,000–640,000, from a second realtor stating the home could be "competitively priced in the $550–575,000 range," and from Michael referring to a value of "$560,000 or $600,000."  Karen testified that Michael had expressed an opinion that the home was worth $1.2 million, revised to $640,000 after they decided it would go

---

[3]  Two of the cars were valued at $30,000 and $15,000, but the value of the third car is unreadable in the record.

to him. She testified that another realtor had valued the house at close to the tax appraisal value, which was $404,000, but indicated it would increase to $500,000 within a few years, and that the house was insured for approximately $300,000 because Michael "didn't like to pay insurance."

Michael testified that he and Karen "could never come to an agreement," that on a number of occasions, he suggested they sell all of their assets and split the proceeds, and that he believed their assets should be split 50–50. He also testified that he was awarded the lawn equipment and tools under the provision in the divorce decree that each party was awarded the property in his or her possession and was awarded the antique cars pursuant to the agreement with his wife. On cross-examination, Michael agreed that the divorce decree awarded each party the property in his or her possession and that the lawn equipment and tools and the antique cars were in Karen's possession at the time of the divorce.

Michael also attempted to offer the testimony of an appraiser who had appraised the home two months prior to the hearing, but the trial court sustained Karen's objection to the admission of new evidence of the value of an asset previously divided in the divorce decree. The trial court admitted the appraisal valuing the home at $457,000 "as of July 15, 2010" as a bill of proof.

**Post-hearing Matters**

Following the final hearing, the trial court issued a letter ruling. Karen filed a motion to enter judgment and Michael filed a "Motion to Fix Amount of Security." At a hearing on both motions, the trial court admitted an appraiser's testimony as to the values of the antique cars, modified its letter ruling, and rendered judgment valuing the antique cars at $65,250, awarding them

to Michael, and ordering Michael to pay Karen one-half of the appraised value. The judgment awarded each party 50% of the pension plan benefits, the employee savings plan benefits, the college fund, the lawn equipment and tools, and the community property interest in the pending lawsuit and the monies previously distributed to each party from the marital bank accounts, and any assets purchased with such funds, including the house Karen purchased. The judgment also awarded Michael any proceeds from the loan to his brother and the 16-foot trailer, and confirmed the coin collection as his separate property. Karen was awarded any proceeds from the loan to her sister, and the horses, the horse trailer, and the antique furniture "for the benefit of the parties' children."

Michael requested, and the trial court entered, findings of fact and conclusions of law. Michael filed a motion for new trial and alternative motion to modify judgment, which the trial court denied. This appeal followed.

## STANDARD OF REVIEW

Michael challenges the trial court's division of previously undivided property. In a post-divorce suit to divide marital property, the trial court must divide the property in a manner it deems just and right, having due regard for the rights of the parties and any children of the marriage. Tex. Fam Code § 9.203; *Brown v. Brown*, 236 S.W.3d 343, 347 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Courts have broad discretion in dividing the marital estate, and we presume the trial court properly exercised its discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). Under an abuse of discretion standard in a family law case, legal and factual insufficiency are not independent grounds for reversal but are instead relevant factors in assessing whether the trial court abused its discretion. *Zeifman v. Michels*,

6

212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). An appellate court will correct the trial court's division of marital property only when a clear abuse of discretion has been established. *Murff*, 615 S.W.2d at 698; *Bell*, 513 S.W.2d at 22. A clear abuse of discretion is shown when the division of the property is manifestly unjust. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). The party challenging the division of property has the burden to show that it was not just and right. *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied); *Holmes v. Holmes*, No. 03-08-00791-CV, 2010 Tex. App. LEXIS 8156, at *23 (Tex. App.—Austin Oct. 5, 2010, no pet.) (mem. op.).

Michael also challenges the trial court's exclusion of expert testimony. We review the trial court's exclusion of evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam). A trial court abuses its discretion when it makes a decision that is arbitrary or unreasonable or that is without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold the district court's evidentiary ruling if there is any legitimate basis for it. *See Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Additionally, Michael complains that the trial court erred in awarding his separate property to Karen. The trial court's broad discretion in dividing marital property does not extend to awarding the separate property of one spouse to the other. *Shanks v. Treadway*, 110 S.W.3d 444, 448 (Tex. 2003) (citing *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977)). We must also construe the divorce decree. An agreed divorce decree is controlled by rules of construction applicable to ordinary contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *Harvey v. Harvey*, 905 S.W.2d 760, 764 (Tex. App.—Austin

1995, no writ). Whether a divorce decree is ambiguous is a question of law, and we must adhere to the literal language of an unambiguous decree. *Hagen v. Hagen*, 282 S.W.3d 899, 901–02 (Tex. 2009).

## DISCUSSION

**Exclusion of Appraiser's Testimony**

In his first issue, Michael argues that the trial court erred in excluding expert testimony regarding the appraised value of the marital home.[4] The trial court excluded the appraiser's testimony, sustaining Karen's objection on the ground that any determination of a new value for the marital home was barred by res judicata.[5] Res judicata bars the relitigation of a claim or cause of action that has been finally adjudicated or that the claimant could have raised in the prior suit. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628–29, 631 (Tex. 1992). Michael argues that res judicata does not apply

---

[4] Karen contends that Michael has waived this issue by failing to "particularize" its relevance in making his offer of proof. The record shows that Michael offered the appraiser's testimony on the ground that the value of the property awarded in the divorce decree was a relevant factor in determining a just and right division of property not divided in the decree, and he asserted error in the exclusion of the appraiser's testimony in his motion for new trial. On this record, we do not find waiver.

[5] Citing Texas Rule of Procedure 94, Michael argues that Karen waived her res judicata objection to the appraiser's testimony by failing to plead it as an affirmative defense. *See* Tex. R. Civ. P. 94. However, Rule 94 lists affirmative defenses that must be set forth "[i]n pleading to a preceding pleading." *Id.* Here, Michael did not assert the issue of a new value in a pleading but raised it for the first time at the final hearing. Therefore, there was no "preceding pleading" to which Karen was required to assert an affirmative defense. In addition, Michael did not object to Karen's oral assertion of res judicata in the trial court and has therefore waived this argument on appeal. *See* Tex. R. App. P. 33.1; *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.) (affirmative defense not waived where party orally raised it during argument to court and opposing party did not object to lack of pleading).

to a post-divorce property division when the divorce decree failed to dispose of a marital asset. While that argument is correct, *see Koepke v. Koepke*, 732 S.W.2d 299, 300 (Tex. 1987); *Eddy v. Eddy*, 710 S.W.2d 783, 785 (Tex. App.—Austin 1986, writ ref'd n.r.e.), it does not apply here where the divorce decree expressly disposed of the asset in question, the marital home. Michael also argues that res judicata does not apply because he is not seeking to relitigate the division of assets but seeks only to establish the value of the home because in issuing the divorce decree, the trial court made no finding of fact concerning the value of the home. He contends that because the trial court is permitted to consider how the property was divided in the divorce decree in making a just and right division of the undivided property, the trial court must establish a value for the marital home and erred in excluding the appraiser's testimony as to its value.

However, although some appellate courts have held that a trial court is permitted to consider the prior division of property as one of the factors in determining a just and right division of undivided property, *see Forgason v. Forgason*, 911 S.W.2d 893, 896 (Tex. App.—Amarillo 1995, writ denied); *Haynes v. Clark*, 776 S.W.2d 784, 788 (Tex. App.—Corpus Christi 1989, writ denied), Michael has cited no authority, and we have found none, for the proposition that a trial court must re-value a previously divided asset when there is evidence of the value upon which the parties' prior agreed division was based. Michael cites *Forgason* for the rule that a just and right post-divorce division of property requires reappraisal of the "ultimate division" of property. *See* 911 S.W.2d at 896. We find Michael's reliance on *Forgason* in this context misplaced. In *Forgason*, neither party offered testimony as to the value of the assets in question. *Id.* at 897. The court concluded that

9

"[w]ithout evidence reflecting the value of the property previously divided, we cannot determine whether the division here pertinent was manifestly unjust . . . ." *Id.*

In contrast, in this post-divorce proceeding, Karen offered undisputed email evidence indicating the value range discussed by the parties and a spreadsheet prepared primarily by Michael indicating the agreed value of the home. She also testified as to the value for the home to which she and Michael agreed, which fell within the value range discussed.[6] In a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may believe one witness, disbelieve others, and resolve inconsistencies in any witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Seasha Pools, Inc. v. Hardister*, 391 S.W.3d 635, 639 (Tex. App.—Austin 2012, no pet.). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could have reasonably believed Karen, especially in light of the undisputed documentary evidence. *See McGalliard*, 722 S.W.2d at 696; *Seasha Pools*, 391 S.W.3d at 639.

Further, Michael agreed to the divorce decree awarding the marital home and did not raise the issue of its value during the divorce proceeding. Had he disputed the values placed on the home by the realtors and discussed by the parties or the agreed-to value, he could have sought an appraisal before the entry of the final decree or sought relief in post-judgment proceedings and direct

---

[6] Michael argues that Karen "opened the door" to expert appraisal testimony by offering evidence and giving testimony concerning the home's value. However, Michael failed to assert this argument or object to Karen's evidence or testimony in the trial court and has therefore waived it. *See* Tex. R. App. P. 33.1. Further, Karen did not offer the evidence and testimony to establish the value of the home but to prove that the parties had obtained valuations, discussed them, and agreed on a value.

appeal of the divorce decree. On this record, we cannot conclude that the trial court had no legitimate basis for excluding the testimony of the appraiser. *See Malone*, 972 S.W.2d 35, 43. We overrule Michael's first issue.

**Just and Right Division of Previously Undivided Property**

In his second issue, Michael contends that the trial court abused its discretion because, in the absence of valuations for all the marital assets, the trial court lacked sufficient evidence to make a just and right division of the property, and the division of the previously undivided property was therefore not supported by legally and factually sufficient evidence. Karen first contends that Michael has not properly presented this issue as a ground for reversal because he raises a challenge to the sufficiency of the evidence rather than an argument that the trial court abused its discretion, which is the standard in a family law case. We do not find this argument persuasive. Although Michael states his issue in terms of sufficiency of the evidence, he argues that the trial court abused its discretion by dividing the property without legally and factually sufficient evidence. We therefore conclude that Michael has properly asserted an abuse of discretion complaint. *See* Tex. R. App. P. 38.9; *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995) (courts are to construe rules on briefing liberally and consider parties' arguments and not merely wording of issues).

Karen also argues that Michael has failed to preserve this issue for appeal. Having construed Michael's issue as a complaint that the trial court abused its discretion, we agree. To preserve a complaint for appellate review, including a complaint that the trial court abused its discretion, a party must have presented to the trial court a timely request, objection, or motion. Tex. R. Civ. P. 33.1; *Knight v. Knight*, 301 S.W.3d 723, 730 (Tex. App.—Houston [14th Dist.] 2009, no

11

pet.) (wife waived complaints that trial court's valuation of certain asset and refusal to reimburse her for loan proceeds were abuse of discretion by failing to present complaints to trial court); *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.) (father waived complaint that trial court abused discretion in ordering sanctions where he did not object to announcement of ruling or file motion for new trial). Although Michael raised the issue of the valuation of the marital home at the final hearing and in his motion for new trial, in neither—nor in any other request, objection, or motion—did he complain of the lack of evidence as to the values of any other assets. Having failed to raise this complaint by timely objection or motion, Michael has waived this issue. *See* Tex. R. App. P. 33.1.

Even if Michael had not waived this issue, we would conclude that he has failed to meet his burden, as the party challenging the trial court's property division, of showing it was manifestly unfair and the trial court abused its discretion. *See Pletcher*, 9 S.W.3d at 446; *Holmes*, 2010 Tex. App. LEXIS 8156, at *23. Michael argues that a just and right division required probative evidence establishing the value of every community asset. Thus, he contends, because Karen produced no evidence of the values of the Harley-Davidson motorcycle, Tahoe, pickups, antique furniture, and lawn equipment and tools and was unsure of the value of the horses and horse trailer, the trial court lacked sufficient information to make a just and right division and abused its discretion in dividing the property.

However, Michael also failed to present evidence of the values of the antique furniture and pickups, as well as other assets the trial court divided—the 16-foot trailer, community

expenses related to the pending lawsuit, and loan to his brother.[7]  "[W]hen a party does not provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide property." *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.); *see Aduli v. Aduli*, 368 S.W.3d 805, 820 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[E]ach party in a divorce proceeding has a burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division."); *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("It is the responsibility of the parties to provide the trial judge with a basis upon which to make the division.").  Having failed to present evidence of assets to be divided, Michael cannot now complain that the trial court lacked sufficient information to divide the marital property.  We overrule Michael's second issue.[8]

**Division of Antique Furniture**

In his third issue, Michael argues that the trial court erred in awarding the antique furniture to Karen.  Michael contends that Karen introduced evidence that conclusively proves that the antique furniture is his separate property and that the trial court could not divide his separate

---

[7]  Michael testified only that he considered the loan to Karen's sister and the loan to his brother "a wash."

[8]  Michael also argues that the trial court could not make a just and right division in the absence of probative evidence establishing the value of the marital home and that the trial court's exclusion of the testimony of the appraiser resulted in a manifestly unfair division.  As we have already concluded, the trial court had sufficient evidence of the prior agreed-to value for the marital home and did not abuse its discretion in excluding the appraiser's testimony.  We therefore also conclude that the exclusion of the appraiser's testimony did not preclude a just and right division of the property.  *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).

property or transfer it from him to Karen. *See Shanks*, 110 S.W.3d at 448 ("Texas law prohibits courts from divesting spouses of their separate property."). However, "res judicata applies to a final divorce decree to the same extent it applies to any other final judgment[,]" and "[i]f an appeal is not timely perfected from the divorce decree, res judicata bars a subsequent collateral attack." *Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990). "A judgment finalizing a divorce and dividing marital property bars relitigation of the property division even if the decree incorrectly characterizes or divides the property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam); *see Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) (trial court has jurisdiction to characterize community property even if it does so incorrectly and where trial court incorrectly characterized all pension benefits as community property, judgment was voidable if properly appealed, but absent appeal, became final and could not be collaterally attacked).

Errors other than lack of jurisdiction render a judgment merely voidable, and it must be attacked within the prescribed time limits. *Hagen*, 282 S.W.3d at 902; *Baxter*, 794 S.W.2d at 762. A post-divorce suit to divide undivided marital property is a new suit. *See* Tex. Fam. Code § 9.201. An appeal from a post-divorce suit to divide property may not collaterally attack an unappealed divorce decree. *See Reiss*, 118 S.W.3d at 443 (having failed to appeal divorce decree, husband could not challenge divestiture of alleged separate property in appeal from order entering QDRO); *Coleman v. Coleman*, No. 01-09-00615-CV, 2010 Tex. App. LEXIS 10166, at *4 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, no pet.) (mem. op.) (in appeal from order on motion to enforce, husband could not collaterally attack unappealed divorce decree). Further, parties are entitled to make agreements as to a division of property even if the trial court would be unable to

order the same division. *Baxter*, 794 S.W.2d at 763. When the parties agree to a division, that agreement will be enforced, and the subsequent judgment binds the parties. *Id.*

Here, the divorce decree made no express reference to the antique furniture but awarded each party the "household furniture [and] furnishings" in his or her possession.[9] Karen testified, and Michael did not dispute, that at the time of the divorce, she was living in the marital home, Michael was living in an apartment, and "all the items in terms of the lawn equipment, the tools, the cars, *everything*" was in her possession. (Emphasis added.) Thus, the uncontroverted evidence established that the antique furniture was in Karen's possession at the time of the divorce. Under the unambiguous terms of the agreed divorce decree and the undisputed facts, the antique furniture was awarded to Karen by the divorce decree.[10] *See Hagen*, 282 S.W.3d at 901. Even assuming that the antique furniture was Michael's separate property and the divorce decree incorrectly characterized and divided his separate property, Michael, having failed to appeal the

[9] Although Michael contends the parties' agreement to divide the marital estate on a "50-50 basis" was incorporated into the divorce decree and Karen testified that she believed the division should be "equal," they offered conflicting views of the values of the assets and which assets were awarded to each party. We must rely on the unambiguous language of the final agreed divorce decree. *See Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009).

[10] Although Karen sought post-divorce division of the antique furniture as property that had not been divided, and the parties argue this issue as one decided in the suit for post-divorce division, the trial court's award in the post-divorce proceeding was merely redundant of the unambiguous divorce decree. *See id.* at 902; *Harvey v. Harvey*, 905 S.W.2d 760, 764 (Tex. App.—Austin 1995, no writ). To the extent Karen sought an award of the antique furniture, the proceeding is more accurately characterized as an action to enforce or assist in the implementation of the property division than a suit for post-divorce division of undivided property. *See* Tex. Fam. Code § 9.006 (enforcement of division of property); *In re Kalathil*, No. 14-10-00933-CV, 2010 Tex. App. LEXIS 8051, at *3–4 (Tex. App.—Houston [14th Dist.] Oct. 5. 2010, orig. proceeding) (mem. op.) (characterizing wife's suit for post-divorce division of previously undisclosed assets as action to enforce division of property agreed to in mediated settlement agreement and divorce decree).

15

divorce decree, cannot now collaterally attack the decree. *See Pearson*, 332 S.W.3d at 363; *Hagen*, 282 S.W.3d at 902; *Reiss*, 118 S.W.3d at 443. We overrule Michael's third issue.[11]

## CONCLUSION

Having overruled Michael's issues, we affirm the trial court's judgment.

_____
Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: November 22, 2013

---

[11] Karen has filed a motion for leave to file surreply and proposed surreply brief. In the surreply, Karen argues that Michael has waived the argument that Karen lacks standing to seek the antique furniture for the children, who are over 18 years of age and did not intervene, because he did not raise it until his reply brief. *See* Tex. R. App. P. 38.1. The motion for leave to file surreply is granted. However, we note that even if Michael had asserted this argument in his opening brief, it would not have succeeded. The divorce decree awarded the furniture to Karen without reference to the children. Likewise, despite the language "for the benefit of the parties' children," the judgment for post-divorce division of property awards the antique furniture to Karen, not to the children.